EXECUTION COPY

SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), and Piedmont Pathology Associates, Inc. and Piedmont Pathology, Professional Corporation (together the "Defendants"), and Kim R. Geisinger (the "Relator," and hereafter collectively referred together with Defendants and the United States as "the Parties"), through their authorized representatives.

RECITALS

A. Defendants are a private pathology laboratory and related physician practice doing business in Hickory, North Carolina.

B. On July 14, 2014, Relator filed a qui tam action in the United States District Court for the Western District of North Carolina captioned *United States ex rel. Kim R. Geisinger, MD v. Piedmont Pathology Associates, Inc. and Piedmont Pathology, PC*, pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). Relator alleges Defendants conducted medically unnecessary procedures for which they then billed government health programs. The United States intervened in part in the Civil Action on November 18, 2016. The United States has not yet filed a complaint in the case.

C. The United States contends that Defendants submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare") and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

1

D.      The United States contends that it has certain civil claims against Defendants arising from Defendants practice of conducting confirmatory Alcian Blue, Periodic Acid Schiff and Immunohistochemistry stains on gastric biopsy specimens before the specimens were reviewed by a pathologist to determine if the aforementioned stains were medically necessary, from August 14, 2012 through February 3, 2015. That conduct is referred to below as the "Covered Conduct."

E.      This Settlement Agreement is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded.

F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Defendants agree to pay to the United States six hundred one thousand dollars ($601,000.00) (the Settlement Amount) under the following terms:.

    a. Defendants shall make an initial payment of $201,000.00 (the "Initial Payment") no later than 15 days after the Effective Date of this Agreement (as defined in Paragraph 29) by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of North Carolina.

    b. Over a period of two years, Defendants shall pay the remaining $400,000.00, plus interest at a rate of 2.5 percent per annum, in accordance with the payment schedule attached as Exhibit A (the "Annual Payments"). The

Annual Payment may be prepaid, in whole or in part, with no penalty or premium.

2. Conditioned upon the United States receiving the Settlement Amount payments from Defendants, the United States agrees that it shall pay to Relator by electronic funds transfer 20% percent of each such payment received under the Settlement Agreement as soon as feasible after receipt of the payment. All such payments on Relator's behalf shall be made pursuant to written instructions to the trust account of Relator's counsel (Higgins Benjamin, PLLC).

3. Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the Settlement Amount and subject to Paragraph 18, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 5 below, and conditioned upon Defendants' full payment of the Settlement Amount and subject to Paragraph 18, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Defendants from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5. Notwithstanding the releases given in paragraph 3 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

   a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

   b. Any criminal liability;

   c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

   d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

   e. Any liability based upon obligations created by this Agreement;

   f. Any liability of individuals;

6. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payments described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7. Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Defendants, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, with the exception of any claim under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs, provided, however, that nothing in this agreement shall

4

be construed as an acknowledgment or agreement by Defendants that Relator is entitled to attorney's fees or expenses.

8. Defendants have provided financial information to the United States and the United States has relied on the accuracy and completeness of the information in reaching this Agreement. Defendants warrant that the Financial Statements are complete and accurate, and were current when provided. If the United States learns of asset(s) in which Defendants had an interest at the time of those Financial Statements that were not disclosed in the information, or if the United States learns of any misrepresentation by Defendants on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the financial information by $500,000 or more, the United States may immediately accelerate all payments due under this Agreement to be due five days from such discovery by the United States.

9. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

10. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and

EXECUTION COPY

servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

11. Defendants fully and finally release the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof. Defendants agree not to contest, challenge, or dispute Relator's share and receipt of settlement proceeds referenced in Paragraph 2 of this Agreement for any reason, in this action or any subsequent action.

12. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

13. Defendants agree to the following:

    a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

    (1) the matters covered by this Agreement;

    (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

6

EXECUTION COPY

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment Defendants makes to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorney fees.

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

    b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of its subsidiaries or

7

affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14. In the event that Defendants fail to pay any amount as provided in paragraph 1 within ten (10) business days of the date on which such payment is due, Defendants shall be in default of their payment obligations ("Payment Default"). The United States will provide written notice of the Payment Default to Defendants, and Defendants shall have ten (10) business days from the date of mailing, by First Class Mail, of notice of Default to cure the Default. If Defendants fail to cure such Payment Default within this ten (10) business day time period, all remaining unpaid portions of the Settlement Amount shall become accelerated and immediately due and payable and interest shall accrue at the rate of 12% per annum compounded daily from the date of Payment Default on the remaining unpaid Settlement Amount (principal and interest), until the

date of full payment. Defendants shall pay United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

15. Notwithstanding the foregoing, in the event of Payment Default as defined in Paragraph 14, above, OIG-HHS may exclude Defendants from participating in all Federal health care programs until Defendants pay the Settlement Amount and reasonable costs as set forth in Paragraph 14, above. OIG-HHS will provide written notice of any such exclusion to Defendants. Defendants waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of exclusion Defendants wish to apply for reinstatement, each must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Defendants will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

15. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 16 (waiver for beneficiaries paragraph), below.

16. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payers based upon the claims defined as Covered Conduct.

17. Defendants warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous

exchange for new value given to Defendants within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

18. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

a. Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

b. If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this

EXECUTION COPY

Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 3 and 4, above Defendants agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 120 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on July 16, 2014; and (iii) the United States has a valid claim against Defendants in the amount of $1,500,000 and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

    c.    Defendants acknowledge that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

19. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

20. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

11

22. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

27. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

28. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

29. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 5-2-17    BY: _____
**JONATHAN H. FERRY**
Assistant United States Attorney
United States Attorney's Office,
Western District of North Carolina

DATED: _____    BY: _____
**LISA M. RE**
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

**THE UNITED STATES OF AMERICA**

DATED: _____ BY: _____
**JONATHAN H. FERRY**
Assistant United States Attorney
United States Attorney's Office,
Western District of North Carolina

DATED: 4/28/17 BY: *[signature]*
**LISA M. RE**
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

**PIEDMONT PATHOLOGY ASSOCIATES, INC
PIEDMONT PATHOLOGY, PROFESSIONAL
CORPORATION -- DEFENDANT**

DATED: _____   BY: _____
**JOSEPH V. VOGEL, M.D.**
President


DATED: _____   BY: _____
**MICHAEL P. THOMAS**
Counsel for Piedmont Pathology Associates, Inc. and
Piedmont Pathology Professional Corporation


DATED: 4/28/17   BY: /s/ Bruce Reinhart
**BRUCE E. REINHART**
Counsel for Piedmont Pathology Associates, Inc. and
Piedmont Pathology Professional Corporation

**PIEDMONT PATHOLOGY ASSOCIATES, INC**
**PIEDMONT PATHOLOGY, PROFESSIONAL**
**CORPORATION -- DEFENDANT**

DATED: 4-27-17    BY: _____
JOSEPH V. VOGEL, M.D.
President

DATED: 4/29/17   BY: _____
MICHAEL P. THOMAS
Counsel for Piedmont Pathology Associates, Inc. and
Piedmont Pathology Professional Corporation

DATED: _____ BY: _____
BRUCE E. REINHART
Counsel for Piedmont Pathology Associates, Inc. and
Piedmont Pathology Professional Corporation

← Back to Message    Execution Settlement Agreem...    1 / 1

EXECUTION COPY

**KIM R. GEISGINER -- RELATOR**

DATED: 4/27/17    BY: _____
KIM R. GEISINGER
Relator

DATED: 4/28/17    BY: _____
JONATHAN WALL
Counsel for Relator

DATED: 4/27/17    BY: _____
WILLIAM HINNANT
Counsel for Relator

15

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

UNITED STATES OF AMERICA *ex rel.*
KIM R. GEISINGER, MD,

    Plaintiffs-Relator,

vs.

PIEDMONT PATHOLOGY ASSOCIATES,
INC.; and PIEDMONT PATHOLOGY, PC,

    Defendants.

Civil File No. _____

## CONSENT JUDGMENT

This matter is before the Court on consent of the United States of America, acting through the United States Attorney for the Western District of North Carolina, on behalf of the Department of Health and Human Services ("HHS"), and Piedmont Pathology Associated Inc. and Piedmont Pathology, Professional Corporation (together the "Defendants"). The United States and the Defendants are collectively referred to as the Parties. Defendants consent to entry of this judgment having been established by virtue of the Settlement Agreement, attached as Exhibit A hereto, it now appears to the Court as follows:

1) This Court has jurisdiction over the Parties as well as the subject matter of this action.
2) Defendants are a private pathology laboratory and related physician practice doing business in Hickory, North Carolina.
3) The Parties entered into a settlement agreement (the "Agreement") that resolved civil claims by the United States against Defendants based on the Covered Conduct (as defined in the attached Agreement). The Agreement was prepared, signed by the Parties and became effective on April \_\_\_, 2017.

4) The Settlement Agreement requires Defendants to make annual installment payments over a period of two years, beginning on May __, 2018 with a final payment to be made on May __, 2019 in accordance with the payment schedule attached as Exhibit A to the Agreement.

5) Defendants are in Default under the Agreement, having failed to timely meet their payment obligations. Written notice of Default has been given to Defendants and the Default has not been cured within the five business day period for curing the Default as provided in the Agreement.

6) Defendants agreed that in the event of a Default under the Agreement, a judgment would be entered in favor of the United States and against Defendants, for the amount set forth below, except that all amounts paid by Defendants pursuant to the Agreement shall be credited against the principal balance of the Consent Judgment.

**WHEREBY, IT IS HEREBY, ORDERED, ADJUDGED AND DECREED** that judgment be entered if favor of the United States and against Defendants, in the amount of $_____, plus interest as set forth in paragraph 2 of the attached Agreement.

**ORDERED, ADJUDGED AND DECREED,** in Charlotte, North Carolina, this ____ day of _____, _____.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT A**

| Pymnt. No | Schedule Date | Schedule Amount | Interest Paid | Principal | Balance Total | Interest Rate |
|---|---|---|---|---|---|---|
| Initial | 15 days | $201,000.00 | $0.00 | $201,000.00 | $400,000.00 | 0% |
| 2 | 5/2/2018 | $210,000.00 | $10,000.00 | $200,000.00 | $200,000.00 | 2.5% |
| 3 | 5/2/2019 | $205,000.00 | $5,000.00 | $200,000.00 | $0.00 | 2.5% |